Ken McKenna for Appellant Aaron Lewis. This case really seems to be about one issue to me, and certainly you may have some additional questions for me. Yes, and that's a good point. You've got 20 minutes, which is a long argument. I don't expect to use that much time in this case. Obviously, you may use that much time. I think probably it should have been classed as a 10-minute argument. Thank you. It makes me feel a lot better. Twenty minutes of standing here without a lot to say is a little scary. Well, don't feel you have to use the time. Say what you think is worth saying. I'd rather be brief and clear and hopefully be more effective. The district court judge made a specific finding in this case that my client was an at-will employee, which is the prevalent law in the state of Nevada that we have to deal with all the time. It's just not true, and I don't know why he misconceived that, other than my opinion as to why he misconceived that is no one argued it. This was a civil service employee, a police officer. There's an association contract. It's actually included in appellee's materials to you, the excerpt of record, and just for the record, I'm sure you've already perused it because we've argued it in our brief. It says for cause. Excuse me? It says you can fire for cause. Yeah, just cause being the actual magic language. And so quite frankly, we think the case needs to go back because the judge just either misunderstood or, again, I don't necessarily blame the judge because in the motion practice that occurred, no one argued that he was an at-will employee, and we certainly didn't argue that he wasn't. I think we all just presumed that we knew he was an employee subject to a contract, and just cause had to be found to terminate. So the judge just really made a mistake in the initial classification as at-will. Given that mistake, given that the record is absolutely clear, given that both sides have to acknowledge that the only way he could be terminated is for just cause, he does have a property interest in that employment as all the case law specifies, and so we need you to reverse this and send it back. Well, given that it has to be for just cause, was just cause shown? Well, we never quite got to that, and I'm certainly prepared to talk about that since I still have quite a few minutes. Well, assume we're talking about 10 minutes, not 20. I still have more than I need. The essence of this factually and just very quickly is my client was a police officer of many years with this department. His father, his relatives, this is a police officer family. He takes great pride in the ethical and moral responsibilities and integrity that it takes to be a police officer. This is a small community. Lyon County is a small area in Nevada. It's a remote area. It's a small town, and it's subject to small town type of thinking, and what we refer to endearingly, although it's not endearing, is the good old boy system. The situation in this case is my client filled out a background package and various materials to get the job. No investigation was done on his background package or the material he provided. He was just hired. Many years later, many years later, after performing exceptionally as a police officer without any write-ups whatsoever, he discovered another police officer had drugs and drug paraphernalia in his home. He was visiting the police officer's home. This caused him great moral turpitude. He really didn't know what to do about it, and he spoke to his father, a police officer, and was basically informed, you know, you have no choice. Even though he's a fellow officer and there's this idea of the blue code and we don't turn fellow officers in, you have no choice. He turned him in. Absolutely nothing was done when he turned him in because it turns out this fellow, Shane Lott, is kind of a golden boy. He's a favorite for many inappropriate reasons. After turning him in, all hell breaks loose. My client is written up for things like going 30 miles an hour in the 25-mile-an-hour zone. He gets these reprimands, these disciplinary proceedings. Ultimately, they make this post-facto determination that on his background investigation that he had not been completely candid when he checked the box. I had never used drugs in the past because he had acknowledged to someone else that, yes, as a youth, as a young man, he had tried marijuana. They utilized that and another piece of information about a military record to say that he had lied on his background check, and that was grounds for termination. Now, the important point, and certainly what we want to get in front of a jury and try, is that even if that's so, even if there are lies on his background package which could subject him to termination, we have many instances in this case through the depositions that have been taken that other officers who are currently employed have lied in worst-case situations, have been found to be liars, and have not been terminated or disciplined. Specifically, this character, Shane Watt, who is where the trouble started, he is someone who put no to prior drug use. How are we going to get to the jury on this case? How are we going to get to it? Yeah. Well, if you send it back, I'm hoping to get to a jury. Yeah. I mean, but, okay, so there's a property interest. Then what are you going to claim? It's a property interest, and he should have only been terminated if there was just cause. There will not be just cause to be shown in this case. And that's, I guess, the point I'm making. I'm kind of getting past what we're here for. But simply, you first have a grievance procedure. I'm sorry? You first have a grievance procedure and an arbitration clause. Yes. And you don't just say, well, was he terminated improperly? What do you do about the fact that you had an opportunity for arbitration and didn't take it? Well, that's not what happened, and that's a misrepresentation in Appellate's brief. And that's why I've specifically mentioned Mr. Shane Lott. Mr. Shane Lott also had a situation where he had a domestic violence. Police were called to his house. He was actually seen battering his child, and the police officer, who was a co-employee, would not arrest him or deal with him properly because they were afraid if they dealt with Mr. Lott in any fashion, they would end up getting in trouble, as my client did. So this Mr. Lott has this very special position in Lyon County. Here's where the rub is. Shane Lott was the association president of the police association. Shane Lott is the one who had the obligation of providing my client with his procedural due process rights, filing the appeals, and proceeding through the administrative procedure. Mr. Lott didn't do that and refused to do it in regard to my client. So that's the breakdown as to why the procedural process didn't go forward. That's why I brought up Mr. Lott as an individual. So we do have legitimate reasons why my client was unable to effectively utilize the administrative procedures. I thought he could he didn't need the association in order to pursue his remedies. Did not necessarily need it, but that was the normal procedure. He had relied upon that procedure and then, as I say, basically was burned by Mr. Lott intentionally. He also had specific statements from the sheriff, and the sheriff has been deposed in this case. The sheriff has testified that no matter what my client said, he would be terminated. There was nothing he could say that would get him out of termination. So we have a predisposition being shown that he's not going to get any kind of independent. Does that matter if he has a post-termination remedy or post-decisional remedy? It doesn't, but it just shows the flavor of the environment in this very tight and small community. So I think there are some issues in that regard, but I think they're issues we'll be able to overcome factually. Thank you, counsel. Thank you. Thank you. Good morning, Your Honors. My name is Keith Loomis. I represent Lyon County and Lyon County Sheriff Sid Smith. Judge Hagan did make the determination that Deputy Lewis was an at-will employee. I have argued in the brief that under a variety of cases that this Court has issued, that if this Court can uphold a decision granting summary judgment on any grounds that are apparent in the record. I have argued in the brief that one of the grounds that's apparent in this record is the fact that even if he had a property interest in his employment, that he was provided with procedural due process in every respect that was required. It's really not even an if anymore, is it? I mean, it's a collective bargaining agreement with a just cause firing provision, so that is a property interest, right? Well, I guess my response to that is perhaps Judge Hagan has seen deeper than I have seen in this case, but I'm not prepared to concede that, no. I am arguing that there are alternative grounds to uphold the decision of Judge Hagan, and I think that the fact that the Sheriff's. You're conceding it, but you don't have a leg to stand on. Like I say, Judge Hagan may have seen deeper than I have. I can't. Or maybe he didn't read as deeply as you did. I don't know. All right. The Sheriff's Office learned of the fact that Deputy Lewis had misrepresented his previous activities when he submitted his personal history statement. They learned that as a result of Mr. Lewis submitting a new personal history statement to the Nevada Highway Patrol in the year 2000. How many years previous was he hired? He was hired in 1996. The use of controlled substances occurred in 1993 and 1994, which was two years before he was hired by the Lyon County Sheriff's Office. The use of the controlled substances itself is not all that significant. What happens is that when Mr. Lewis signs his personal history statement, he is told there's a penalty for falsifications, and that if you falsify your answers on this, you may be removed from consideration for an appointment. It also asks the deputy to certify his answer. It says, and he did sign that, he certified that every statement in this background investigation is true to the best of my knowledge, information, and belief. And what happens is that once the Sheriff's Office learned that Mr. Lewis had put completely different answers on his application to the Highway Patrol, they commenced an investigation to determine whether or not that was true. Mr. Lewis admitted to the investigator, yes, I did lie on those things, and my concern was that if I told the truth, I wouldn't be hired. Well, one of the obligations that the Sheriff's Office saw itself being under was the fact that under the Brady and Giglio cases that they have to advise defense counsel in criminal defense cases of exculpatory evidence, including information about the credibility of their witnesses. Now, if a defense attorney gets a hold of this certification, says every statement in here is true to the best of my knowledge, information, and belief, and I know that there's a penalty attached for making a false statement, and I know that Mr. Lewis falsified that statement intentionally, every criminal defense attorney in the State is going to use that against him, and that's going to affect the ability of our deputy to serve as a law enforcement officer and credibly testify in court. You know, I'm not about to decide what a fair arbitrator would find. Okay. But the question is, did he have a process, a grievance process, that was adequate? Yes. You know, under due process rules. That's the question. And it sounds like it's a tad tainted,  The Sheriff's Office has a series of rules and regulations that provide that if you are dissatisfied with the result of the pre-disciplinary hearing, you may use the grievance process set out in the appropriate collective bargaining agreement. Mr. Lewis was a member of the Sheriff's Office Employees Association, which did have a collective bargaining agreement with the county, and that collective bargaining agreement provided that you have a grievance process if you're dissatisfied with discipline. One, the first step is to grieve it to the sheriff, which was done. Mr. Lewis did file a grievance with the sheriff. The sheriff denied it. Already made up his mind. There's no evidence of that in the record. And that's one of the obligations is to create a material issue of genuine fact that this sheriff had already made up his mind. There is no evidence of that in the record. That's simply an assertion that's been made by counsel. The next step is that you are entitled to proceed to arbitration before a neutral arbitrator. If you can't agree on an arbitrator with the county, then you can select a choice. You have a choice. You get a list of seven arbitrators. You strike them, and you come up with the last arbitrator, and that person serves as the arbitrator. You have an option. The officer can request that the association pay for the cost of that arbitration by obtaining the consent of the executive branch or the executive officer of the association's consent to pay for that. If the executive officer won't pay for it, the officer still has the option of proceeding on his own at his own expense. That option was available to this officer and was not pursued. Okay, well, we know that the executive association was headed by Mr. Lott, right? Mr. Lott, yes. Okay, so that is kind of an option that's gone. But there's no information that Mr. Lott was at all aware of the ñ and there's two responses to that. Number one, there's no evidence in the record that Mr. Lott was at all aware that Deputy Lewis had complained about him until after he filed his complaint in court. And that's when problems developed between Mr. Lewis and Mr. Lott. Mr. Lott accompanied Mr. Lewis to the pre-disciplinary hearing, along with a representative from the International Brotherhood of Police Officers. They both came to the pre-disciplinary hearing. The second response to that is there is a duty of fair representation by a union towards its members. Mr. Lott is not a member of the administration of the sheriff's office. He is a member of the union. He is the executive officer of the union, and it is his job as an officer of the union to support the officers in the association. If Mr. Lott didn't do what he was supposed to do on behalf of Mr. Lewis, well, that's a breach of the duty of fair representation on the part of the union. It has nothing to do with the county. Well, unfortunately, in labor law, it normally does. Normally, if you don't go to arbitration because the union has breached the duty of fair representation, you sue both the union and the employer on the underlying claim. Now, whether that's true in public employee cases may be a different matter, but the traditional breach of a duty of fair representation suit is against both the union and the employer, and they're both liable. Well, the county made available the grievance procedure, which set forth the steps that Mr. Lewis was entitled to take if he wanted to. They said you can go through the association if you can get the association to pay for it, or you can do it yourself. That option was available. And what I would like to do is- But there's a big expense associated with doing it yourself without the association. But the county doesn't make the decision as to whether the union is going to pay for that representation or not. That's not the county's choice. It's not their obligation. That's something that's made available to the officer, and if he can convince the association that they ought to pay for it, which they did not in this case, then it's up to him. Okay. There's- You said there were two answers. That was one. Okay. Well, the first answer is that there was a provision for neutral review by a neutral hearing officer. The second one is the obligation was on the part of the union to represent Mr. Lewis if there was a problem. The fact that the union wasn't representing Mr. Lewis wasn't the county's problem. Mr. Lewis had the availability of a neutral arbitrator, and he potentially didn't get the assistance from his union, which he didn't get. He did get the assistance of the union in that the union did file for the arbitration, but they never agreed to fund the cost of the arbitration. But that's between Mr. Lewis and the union, not the county. There is a statutory provision in the State of Nevada that authorizes every employee, regardless of whether they're a member of an association or not, to seek a hearing before the Board of County Commissioners. That's an independent basis. It's only been used once, to my knowledge, in Nevada, so it's just not commonly available. It's a statute that's available. It's set out in NRS 245.065. It is not stated in my brief. It has not been addressed. It's just a rarely used procedure. In this case, prior to the time that Mr. Lewis appeared before Sheriff Smith, he was given notice of the allegations that were made against him. He was advised that he had an opportunity to appear for a hearing in advance of any discipline being imposed. He did appear at that pre-disciplinary hearing with the Sheriff's Association representative, along with the representative of the International Brotherhood of Police Officers. So he had notice. He had an opportunity for a hearing. He was given a hearing prior to the time of his termination. He had the grievance process following the termination that would have ultimately put him in front of a neutral arbitrator. The only allegation that was made in Mr. Lewis's complaint, when he filed the complaint, was that he wasn't notified of his right to appeal, but he, in fact, exercised that right to appeal. He had previously been the subject of a disciplinary process that had gone clear to the neutral arbitrator, and that disciplinary process had been upheld by the neutral arbitrator. So Mr. Lewis was well aware of his rights to appeal. We responded with all that information in the motion for summary judgment, and there was absolutely no response from Mr. Lewis as to what was the procedural defect in the termination process. There was no response at all in the opposition to the motion for summary judgment. So this is notice pleading. I'm trying to read the opposition and say, well, what possibly could we have here that's a problem with the procedure? And there were a lot of allegations made about Sheriff Smith that he was biased, that he had made up his mind. And I pointed out in the reply that most of the facts that are asserted in support of that assertion don't exist. They simply weren't true. There's a letter in the excerpt of the record from Sheriff Smith giving Mr. Lewis an attaboy. He spoke highly of him in the letter. The investigation that was done by the NHP investigator resulted in the comment that all people were positive about Mr. Lewis. There is no evidence in this record that creates a genuine issue of material fact that Sheriff Smith had predetermined the outcome of this case. Even if he had, this Court has said in Walker v. City of Berkeley that it's not required that you give an employee with a property interest an unbiased decision-maker at the pre-termination hearing. So even if we said, yes, Sheriff Smith had some bias, which I'm not conceding. I don't agree that there's material issue of fact on that. Even if we did, the case that this Court has decided is that you don't have to have an unbiased decision-maker at the pre-termination hearing. So even if he was biased, that's not a violation of due process. And in response to Judge Fletcher's comment, you had indicated, well, was there just cause? And I would submit that just cause is more of a contractual concept. It goes through a breach of contract. And what we're looking at is the question of the procedures that were made available to Deputy Lewis when his employment was terminated. And so I think that just cause is a different question from procedure due process. And let me, you know. Okay. Well, Judge Hagan made some other rulings in this case, which include the fact that there is no property right in the contents of internal affairs investigation reports where adverse comments are placed on them. That's a decision that he made in this case that has not been challenged on appeal. He also said there is no violation of due process in the taking of a liberty interest from this deputy because, number one, there was no false statement that was made about Deputy Lewis that was ever published. In fact, the fact that he lied was a true statement. And he said there was no publication because Deputy Lewis had consented to the release of records to the Nevada Highway Patrol. So he says there is no violation of a liberty interest in this case either. So that has not been challenged on appeal. If you'll note in the footnote to his decision, he refers to the fact that maybe there's a substantive due process claim in here somewhere, but I don't see it from the pleadings. And even if there was, I don't find a substantive due process claim. And I think that issue hasn't been raised on appeal either. In the reply brief to the opposition motion or summary judgment, I discussed the case where out of Santa Clara, and the name escapes me, it's in my reply to the motion, but it talks about this circuit has not said that there is a substantive due process issue raised by a termination of employment. And that was the holding of Judge Hagen in this case also. So none of those issues have been raised on appeal. The only issue that's before you is the question of whether there was a denial of procedural due process in the process that led to Mr. Lewis's termination. And we gave him notice. We gave him the allegations. We gave him the information behind the allegations. We gave him the opportunity for a hearing to be represented by a person of his choice. He had people of his choice with him at the time of the pre-termination hearing. He was terminated. He pursued the grievance process. He filed a grievance with the sheriff. The association filed a request for the arbitration, and that was where it ended. So, you know, with all due respect, I just failed to see a procedural due process violation in that process. All right. You look very skeptical. No, I'm just looking at the time. I think ---- I have five minutes. I know you have five minutes, but there are dead horses that can be beaten. Okay. Thank you for the opportunity to appear. Counsel, do you have anything further? You look as if you're being forced up. You're not. No, I don't have anything real significant to add other than to say it's a pleasure to appear here, and I love this courtroom. And I don't ever want to be disabled. Thank you. All right. The case just argued will be submitted. The final case of the morning is real properties versus Stewart annoyances limited. I have no idea. I have no idea. Okay. Good morning, Your Honors. I'm Louis Miller. I represent Rod Stewart and related parties. With me this morning is my partner, Carrie Garvis Wright. I want to make a comment before I turn right to the contracts and get down to it. My burden is to show that this contract is reasonably susceptible to more than one interpretation, and there are tribal issues of fact. I stand here today having looked at the contract myself. Magistrate judges looked at the contract. Opposing counsels looked at the contract. And the district court judges looked at the contract. And there are three different interpretations that the parties have come up with in writing. The magistrate judge and I see this as a force majeure situation. Mr. Stewart.
judges: B. Fletcher, Reinhardt, Restani